# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF INDIANA,

AT INDIANAPOLIS, MAY TERM, 1881, IN THE SIXTY-FIFTH
YEAR OF THE STATE.

No. 8998.

### POUDER ET AL. *v.* TATE.

PLEADING.—*Answer.*—*Reply.*—A reply, or answer, to a pleading must respond to the entire pleading, or part thereof, to which it purports to be addressed, or it will be bad on demurrer for want of sufficient facts.

SAME.—*Cross Complaint.*—*Co-Partnership.*—*Fraudulent Conduct.*—*Reply of Final Settlement.*—*Limited Denial.*—Where the gravamen of the cause of action stated in a cross complaint is alleged fraudulent and illegal conduct and acts of plaintiff in procuring a final settlement of co-partnership dealings, a reply of full and final settlement with knowledge thereof does not constitute a good defence, on demurrer, to all the matters of fact relied upon in the cross complaint, and is not aided by a limited denial, in conclusion, of "all the allegations of the answer and cross complaint not herein specially replied to."

From the Hamilton Circuit Court.

*H. W. Harrington* and *A. G. Howe*, for appellants.
*J. Hanna*, *F. Knefler* and *J. S. Berryhill*, for appellee.

HOWK, C. J.—This suit was commenced, by the appellee against the appellants, in the Marion Superior Court, on the 14th day of May, 1878. The object of the suit was to col-

Pouder *et al. v.* Tate.

lect certain notes and to foreclose a certain mortgage, executed by the appellant Pouder to the appellee, on certain real estate in Marion county, to secure the payment of said notes. The other appellants were made defendants to the action, because they claimed to have an interest, adverse to the appellee, in the mortgaged premises. The appellant John Penn Brock answered, setting up a prior mortgage to that of the appellee, and the other appellants made default. The only controversy in the case, both in the trial court and in this court, is between the appellant Pouder and the appellee.

After the cause was put at issue, the venue thereof was changed to the court below, where a trial of the issues, by a jury, resulted in a verdict for the appellee. Over the motion of appellant Pouder for a new trial, and his exception saved, the court rendered judgment in the appellee's favor for the amount of the verdict, and for the foreclosure of the mortgage and the sale of the mortgaged premises, etc.

In this court the appellant Pouder assigns, as errors, the following decisions of the circuit court:

1. In overruling his motion to strike out the second paragraph of appellee's reply;

2. In overruling his demurrer to said second paragraph of reply; and,

3. In overruling his motion for a new trial.

The second paragraph of appellee's reply was addressed, on its face, "to the several paragraphs of answer, and to the cross complaint of the defendant Milton Pouder." To present, intelligibly, Pouder's objections to the second reply, and the arguments of his counsel in support of those objections, it is necessary that we should first give a summarized statement of the allegations, not only of said reply, but also of the cross complaint, to which it responded. In his cross complaint, the said Pouder alleged, in substance, that, on the —— day of ————, 1873, he and the appellee entered into a co-partnership for the purpose of buying and selling

horses and dealing in real estate, and were co-partners in various other matters, and, under said arrangement, they bought and sold horses and other stock until the summer of 1873; that, in the summer of 1873, they traded a lot of horses then on hand, of the value of $4,000, and paid $5,000 in cash, and executed their five joint notes, amounting in all to $9,600, to one Joseph D. Irwin for the conveyance to them of the following real estate in Marion county, Indiana, to wit: Lots 1, 2 and 3 in the subdivision of the east one-half of the north-west quarter of section 24, township 15 north, of range 3 east, made by William J. Wiley, commissioner, and recorded on page 69 of plat book 2, and 15 acres of land, described by metes and bounds, and that said real estate was worth said sum of $18,600; that, at the time of executing said notes for said sum of $9,600, said Tate and appellant executed and delivered to said Irwin their mortgage on said real estate to secure the payment of said notes, of which notes a particular description was given; that afterward, on the —— day of ————, 187–, the said Irwin assigned the last one of said notes, for $3,200, to one James Canine; that, when the parties entered into their said co-partnership, the appellant executed his note for $5,000 to the appellee, who furnished the capital, to wit, $10,000, for transacting said co-partnership business; that, when the said mortgage notes became due, neither the appellee nor the appellant paid the same, and the holders thereof, said Irwin and said Canine, brought suit thereon in the Marion Superior Court for judgment on said notes, and for the foreclosure of said mortgage and the sale of the mortgaged property; that the appellee purchased of said Canine the said note for $3,200, for a sum much less than the amount due thereon, to wit, for $1,000; that such proceedings were had in the said foreclosure suit that, upon an order of sale issued therein, the said mortgaged real estate was sold by

the sheriff of Marion county, and bid in at such sale by said Irwin, and a sheriff's certificate of such sale was issued to said Irwin therefor ; that, a short time after said sheriff's sale and the issue of said certificate, the appellee purchased said certificate for —— thousand dollars, and took an assignment thereof in his own name ; that, at the expiration of one year from the issuing of said certificate, the appellee surrendered the same to said sheriff and took from him a deed of said real estate to himself, and still held the title thereto in his own name ; that, on the —— day of ———, 1875, the appellant and the appellee entered into a writing, purporting to be a settlement between them of all claims, rights and amounts due by reason of their co-partnership transactions, but the appellant averred that, at the time of said supposed settlement, he had no knowledge that the appellee had taken the title to said real estate in his own name, but the appellant supposed, and the appellee represented, that he had purchased said certificate and taken said deed of conveyance for the joint benefit of both, and concealed the fact that he had taken the title to himself ; that, at said time, the appellant had no knowledge that the appellee had purchased the said note so assigned to said Canine, for a sum less than the amount due thereon, but the appellee concealed said fact from the appellant ; that, at the time of said supposed settlement, the appellee computed the interest due him on said sum of $5,000 at the rate of twenty per cent., and compounded the said interest, contrary to the form of the statute in such cases made and provided, which said facts the appellee concealed from the appellant, who had no knowledge thereof until long after said supposed settlement. Wherefore the appellant said there never had been any settlement of said co-partnership affairs, and he prayed for an accounting, and, upon final hearing, for a judgment against appellee for $5,000, and for all other proper relief.

The appellee responded to appellant's cross complaint and the several paragraphs of his answer, in a reply of two paragraphs, of which the first was a general denial.

In the second paragraph of his reply, the appellee alleged in substance, that on the 8th day of May, 1875, he and the appellant Pouder had an accounting together and an agreement of all their then unsettled business, and came to an amicable understanding and agreement as to all matters before then unsettled between them, and this agreement was then and there reduced to writing, and signed by them respectively, a copy of which agreement was filed with and made a part of said second reply; that, at the date of the execution of said agreement, the appellant executed and delivered to appellee the several notes described in the complaint, and also a certain mortgage to secure the payment of said notes, a copy of which mortgage was therewith filed and made part thereof; and the appellee averred, that said agreement and settlement were according to the facts, and that no fraud was practiced by either party, but that each of the parties well understood the matters and facts at the time, and to the end that the matters and facts, as they existed, might be preserved, they executed the said written agreement; that the matters rested in this condition until the 14th day of February, 1876, when a supplemental agreement in writing was made between the appellee and appellant, and signed by them respectively, a copy of which was also filed with and made a part of said second reply; that in pursuance thereof, and to carry it out in good faith, and to accommodate the appellant, the appellee entered a release of his mortgage security, evidenced by the mortgage first described in said reply, and then appellant procured the release of the senior mortgage, mentioned in the first stipulation of said supplemental agreement, and placed a mortgage of $4,000, as mentioned in the third stipulation of said supplemental agreement, and then executed to appellee the

mortgage sued on in this action, all of which was done and agreed to by the appellee, in the interest of good faith with and at the special request of the appellant and to accommodate him in the premises; that matters rested in this condition until the 8th day of May, 1878, when the appellee and appellant met at the office of Messrs. Hanna and Knefler, for the purpose of settling and adjusting the matter of appellant's interest in the fifteen acres of land, described in his cross complaint, in this cause; that the said joint debt of $7,174.11, the amount of said Joseph Irwin's bid of May 8th, 1875, had been fully paid by appellee, the appellant being wholly unable to pay his one-half or any part thereof, and therefore the appellee was compelled to pay the whole thereof, in order to save said property, all of which was well known to and fully understood by the appellant; that when they thus met to adjust and finally settle said matter between them, it was finally agreed that the appellee should have, keep and retain the whole of said land and account to the appellant therefor at the rate of $500 per acre, that is to say, for the appellant's undivided one-half interest therein, the appellee agreed to allow the appellant, who then and there agreed to take from appellee, the sum of $500 per acre therefor, and said sum to operate as a credit on the one-half of said sum of $7,174.11, and the interest thereon at the rate of ten per cent. from May 8th, 1875, that being the appellant's liability to appellee by reason of his payment of the whole of said sum of $7,174.11, and the interest accrued thereon; and the parties having then and there so agreed, it was then and there, in consideration of the premises, further agreed, that, as the title to said land was then in the name of the appellee, it should remain so, free and clear of all claim or interest of the appellant in and to the same, all of which was in consideration of the premises aforesaid. And the appellee said, that after allowing the appellant a credit for the value of the one-half of said land, at

the agreed rate of $500 per acre, upon the one-half of said sum of $7,174.11, and the interest thereon at the rate of ten per cent., there was a balance of $788.15 due him from the appellant, as of the date of May 8th, 1875, and wholly unpaid, on that account, and that the notes and mortgage sued on in this action were also wholly unpaid. Wherefore the appellee said that, by reason of the premises, the appellant should not have, or claim or be allowed, any sum whatever on account of any, or either, or all the matters and things by him averred in the several paragraphs of his answer, or in his cross complaint; and that the appellee should have judgment and decree of foreclosure, as in his complaint prayed for, and he prayed judgment accordingly. And the appellee denied all the allegations of said answer and cross complaint not specially replied to in said second paragraph of his reply.

In their argument of this cause, in this court, the appellant's counsel have not even alluded to the supposed error of the court below, in overruling the motion to strike out the second paragraph of appellee's reply. Under the settled practice of this court, the first alleged error, if it were an error, must be regarded as waived.

The appellant's counsel claim, however, that the court erred in overruling the demurrer, for the want of facts, to the second reply. The objection urged by counsel to the sufficiency of this reply is, that while it purports on its face to be a reply or answer to the entire cross complaint, yet, in fact, it fails to reply to all the allegations of the cross complaint. If the second reply is open to this objection, it was insufficient for this reason, and the demurrer thereto ought to have been sustained. Under the code, the rule of pleading, which requires that every answer or reply must respond to the entire pleading, or part thereof, to which it purports to be an answer or reply, or it will be held bad on a demurrer thereto for the want of sufficient facts, may be

regarded as settled by the decisions of this court. *Smith*
v. *Little*, 67 Ind. 549; *Frazee* v. *Frazee*, 70 Ind. 411;
*Thompson* v. *Toohey*, 71 Ind. 296.

The appellee's counsel do not dispute the rule of pleading
relied upon by the appellant, nor do they controvert, as we
understand them, the proposition that the second reply fails
to respond to or meet, by its special or affirmative allega-
tions, the case made by the facts stated in the appellant's
cross complaint, but they rely, apparently with much con-
fidence, on the denial contained in the concluding sentence
of the second reply. This denial, however, is by its terms
a special denial, and is expressly limited to the denial of
"all the allegations of the answer and cross complaint, not
herein" (in the second reply) "specially replied to." If
all the allegations of the cross complaint, which constituted
the grounds of the appellant's cross action, were "specially
replied to," and the facts specially replied were not suffi-
cient to constitute a good reply, then the denial in the clos-
ing sentence of the second reply would not aid the plead-
ing and make of it a good or sufficient reply. Here lies the
difficulty, as it seems to us, with the second paragraph of the
appellee's reply. The gravamen of the appellant's cause of
action, as stated in his cross complaint, was the alleged
fraudulent and illegal conduct and acts of appellee, in pro-
curing a final settlement of co-partnership dealings with ap-
pellant. In his second reply appellee replied specially to the
material facts stated by appellant in his cross complaint, by al-
leging that there had been such full and final settlement, by and
between the parties, of all the matters stated by appellant as
constituting his cause of action, with the full knowledge and
understanding, on his part, of all those matters at the time
of such settlement. It is true, we think, that the final set-
tlement, thus pleaded by the appellee, did not constitute a
good defence to all the matters of fact relied upon by the
appellant as his cause of action; but it is equally true that

such final settlement was specially pleaded in the second reply, as a complete bar to the entire cause of action stated in the cross complaint. Therefore, the second reply is not aided, as it seems to us, by the special and limited denial therein, and, the reply being bad, without reference to the denial, it must be held insufficient on the demurrer thereto for the want of facts, notwithstanding such denial.

We are of the opinion, for the reasons given, that the court clearly erred in overruling the appellant's demurrer to the second paragraph of the appellee's reply.

This conclusion renders it wholly unnecessary and, perhaps, improper, for us now to consider or decide any of the questions arising under the alleged error of the trial court in overruling the appellant's motion for a new trial. These questions are founded chiefly upon supposed errors of law, occurring at the trial, and these errors may not be repeated, conceding them to be such, on another trial of the cause, and, perhaps, on different issues.

The judgment is reversed, at the appellee's costs, and the cause is remanded with instructions to sustain the demurrer to the second paragraph of the reply, and for further proceedings not inconsistent with this opinion.